UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GARY E. SHEPHARD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:05-CV-79 |
| | ) | (VARLAN/GUYTON) |
| JOHN O'QUINN and O'QUINN | ) | |
| ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil action is before the Court on the plaintiff's Motion for Default Judgment [Doc. 35] filed February 2, 2006. Default was entered by the Clerk on February 1, 2006 [Doc. 34]. Defendants have now moved for default judgment pursuant to Fed. R. Civ. P. 55(b)(1). No response or opposition to this motion has been filed and the time for doing so has passed. *See* L.R. 7.1(a), 7.2. Pursuant to plaintiff's request, the Court held a hearing on the pending motion for default judgment on April 6, 2006. The plaintiff was present and represented by attorneys Katherine Young and Dale Montpelier. Both plaintiff and his wife presented testimony. Neither the defendants nor their counsel appeared. The Court further notes that a copy of the Court's order [Doc. 37] scheduling the default judgment hearing was sent via certified mail to both defendant John O'Quinn and to defendants' counsel and that the receipt cards for those letters are contained in the record.

**I.     Plaintiff's Motion for Default Judgment**

As set forth in the Amended Complaint, plaintiff Gary E. Shephard, Jr. asserts claims under the Employee Retirement Security Income Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., the

Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), and the Tennessee common law of conversion. Mr. Shephard was previously employed by defendant O'Quinn Enterprises, Inc., beginning in November 2002. One of the benefits offered to employees of O'Quinn Enterprises was participation in the company's group health insurance plan through Blue Cross/Blue Shield of Tennessee. The cost of the health insurance premiums were split between the employer and the employee. O'Quinn Enterprises deducted $59.83 per pay period from Mr. Shephard's paycheck for his portion of the health insurance premium. Mr. Shephard also participated in the dental benefits plan and $8.50 was deducted from each paycheck for the employee portion of this premium.

Mr. Shephard learned that he needed to have surgery on his left knee in the summer of 2003. In accordance with the requirements of his insurance plan, Mr. Shephard obtained prior approval for the surgery from Blue Cross/Blue Shield and made plans to have the surgery on or about August 5, 2003. On August 1, 2003, a few days before his scheduled surgery, Mr. Shephard was laid off due to lack of work. Defendant John O'Quinn told Mr. Shephard that the layoff would be temporary and that his insurance coverage was paid for one month after his layoff. Thus, Mr. O'Quinn assured Mr. Shephard that his health insurance would still be effective the following week when he had knee surgery. Mr. O'Quinn also told Mr. Shephard that O'Quinn Enterprises would pay his COBRA premiums for the first two months after his layoff.

Mr. Shephard later learned that for some period of time the deductions taken from his pay were not being applied to his health insurance premium and that his insurance coverage had lapsed. He also discovered that he did not have COBRA coverage as promised. Mr. Shephard testified that this lapse in coverage adversely affected his ability to obtain new insurance coverage as the problem

with his knee was then considered a preexisting condition. The coverage lapse also placed him last on a list for transplants which delayed his ability to obtain complete treatment for his condition.

The Shephards began receiving letters and phone calls from collection agencies to recover the costs of his surgery and recovery expenses which would have been paid by Blue Cross/Blue Shield if his insurance coverage had been effective. Both Mr. and Mrs. Shephard testified that these phone calls were stressful, frustrating, and scary. The outstanding bills also adversely affected Mr. Shephard's credit score.

After careful consideration of the evidence and arguments presented on April 6, 2006 and the entire record, the Court finds that the plaintiff's motion for default judgment [Doc. 35] is well-taken and will be **GRANTED**. Fed. R. Civ. P. 55(b)(2). The Court finds that plaintiff is entitled to recover $12,199.86 for medical expenses that were due to him under the terms of the plan as follows: $3,035.00 for Dr. Betcher; $810.00 for Knoxville Anesthesia Group; and $8,354.86 for St. Mary's Medical Center. 29 U.S.C. § 1132(a)(1)(B).

**II.     Attorney Fees**

Plaintiff is also seeking his attorney fees and costs in conjunction with this action. ERISA allows the Court discretion to award a reasonable attorney's fee and costs. 29 U.S.C. § 1132(g)(1). In considering an award of attorney's fees in an ERISA action, the Court is to consider: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding

ERISA; and (5) the relative merits of the parties' positions. *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005).

As noted above, the evidence presented by plaintiff is unrebutted as the defendants have not responded to any pleadings, motions, or court orders since the scheduling conference on August 26, 2005 and did not appear at the default judgment hearing. Thus, the Court is presented with a situation in which money was deducted from the plaintiff's paycheck for health and dental insurance premiums and that money was not applied to his coverage. Plaintiff thus incurred medical expenses in reliance on that coverage and on the representations of Mr. O'Quinn that his coverage would continue for a period of time after his layoff. The Court finds that defendants' actions are at best incompetent and at worst fraudulent. As Mr. Shephard testified that O'Quinn Enterprises is an ongoing business, the Court finds that defendants do have the ability to satisfy an award of attorney's fees. The Court further finds that an award of attorney's fees in this case will act as a deterrent and caution to other employers who may purport to provide a group health insurance benefit to their employees. Finally, having only heard one side of the story in light of the defendants' default, the Court finds that the merits of the parties' positions weighs in favor of the plaintiff.[1]

After considering all of these factors, the Court finds that such an award would be appropriate in this case. As established through the testimony of Mr. Montpelier, one of plaintiff's attorneys, plaintiff seeks attorney fees totaling $16,709.50 and costs totaling $200.00.[2] Although

---

[1] Plaintiff has acknowledged that he is not seeking to confer a common benefit on all participants and beneficiaries of the plan or to resolve significant legal questions regarding ERISA.

[2] As Mr. Montpelier testified and as set forth in plaintiff's exhibit 12, the plaintiff incurred costs totaling $942.83. However, only plaintiff's expenses in filing this action and serving process on the defendants are reimbursable costs.

this award is greater than the amount of medical expenses sought by plaintiff, the Court notes that there is no requirement in ERISA cases that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages. *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). An award of attorneys' fees must be reasonable as determined under the "lodestar" approach. *Id*. In applying the lodestar approach, the Court is instructed to start with the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id*. There is a strong presumption that this lodestar figure represents a reasonable fee. *Id*. at 1401-1402.

The Court has carefully reviewed the invoice submitted by plaintiff's attorneys [Pl. Ex. 11]. It contains a detailed description of hours worked and the work performed in prosecuting Mr. Shephard's case. The invoice reflects that all attorney hours would be compensated at a rate of $225.00 per hour and that all paralegal or legal assistant time would be compensated at a rate of $95.00 per hour. Plaintiff's counsel expended a total of 70 attorney hours for a total of $15,750.00 and a total of 10.1 paralegal hours for a total of $959.50. The Court finds that these rates are comparable to the rates charged in the area for similar work. Thus, the Court concludes that the attorney fees and costs requested are reasonable and appropriate.

**III.    Statutory Penalties**

Plaintiff next requests that the Court award statutory penalties of $110.00 per day pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 for defendants' failure to inform him of the COBRA coverage he was entitled to receive and the money owed to maintain this coverage. The statute provides as follows:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). *See* 29 C.F.R. § 2575.502c-1 ("the maximum amount of the civil monetary penalty ... is hereby increased from $100 a day to $110 a day"). Thus, the Court has discretion in imposing penalties for an employer's failure to disclose. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir.1994). Plaintiff has proposed that such penalty be awarded beginning January 1, 2004 through the date of the default judgment hearing, April 6, 2006, or for a total of 826 days.

In considering whether such an award is appropriate and for what period of time, the Court observes that the undisputed facts present an egregious case whereby the plaintiff has truly been harmed by the defendants' actions. The defendants have presented no mitigating evidence or defense to these claims. Thus, in the absence of any countervailing proof, the Court concludes that the defendants acted deliberately, rather than from neglect or misfeasance. *See, e.g., Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir. 1988). Therefore, the Court finds that an award of statutory penalties of $110.00 per day for 826 days totaling $90,860.00 as requested is appropriate.

**IV.    Conversion**

Finally, plaintiff also requests damages under the theory of conversion for the last three months of premiums which were deducted from his paycheck. However, ERISA's civil enforcement remedies are exclusive and preempt any state law remedies. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S.

41, 54 (1987); *Briscoe v. Fine*, 2006 WL 947189 at *20 (6th Cir. April 13, 2006). Therefore, plaintiff's conversion claim is preempted and an additional award would not be appropriate.

**V.     Conclusion**

As set forth above, plaintiff's motion for default judgment [Doc. 35] will be **GRANTED**. Enter default judgment accordingly.

                                               s/ Thomas A. Varlan
                                               UNITED STATES DISTRICT JUDGE